May it please the court, I'm Brad Bogan for Prince Charles Bulletin. Uh, so we have raised two issues in this case, both relating to the restitution award that the district court increased after sentencing. The first issue relates to whether the award exceeds the statutory maximum and the second issue is whether the district court had authority to increase the award under Rule 35. And there's also the question of whether the appeal waiver in Mr. Boateng's plea agreement bars one or the other of these issues on appeal. Um, so I'll just briefly go over the facts to set the table here and give some context to the disputed restitution amounts. Mr. Boateng was charged in a four count indictment with two counts of access device fraud and two counts of identity theft. Uh, the factual, uh, facts underlying the case were that somebody had accessed a couple of Capital One credit card accounts and changed the account holder's name and address to that of Mr. Boateng and he received the credit cards by mail and used them to make unauthorized purchases. Um, at some point the government moved to dismiss the two identity theft counts. The district court granted that motion, uh, leaving just the two access device fraud counts. On the day the trial was set to begin, the parties reached a plea agreement where Mr. Boateng would plead guilty to just one count of access device fraud and the government would agree to dismiss the other one. And so the factual basis for the plea agreement was, as I said, that somebody had hacked these credit card accounts, credit cards were issued to Boateng and he used them to make unauthorized purchases. Uh, in the factual basis, which was just to the one count of access device fraud, he admitted that he caused a loss to Capital One of about $5,200, a little bit less than that. Um, also in the plea agreement, he agreed to pay restitution as ordered by the court, uh, and he also agreed or waived his right to appeal the sentence, uh, on any ground and also to collaterally attack his sentence in a post-conviction proceedings such as 2255. So after the plea, the probation officer prepares a PSR and recommends a total loss amount higher than that, uh, in the factual basis for the plea agreement. The probation officer treated the, uh, conduct underlying the dismissed access device count as relevant conduct, at least for purposes of the loss amount, uh, that goes into the sentencing guidelines calculation. That was about $5,800. So all told, the loss amount, according to the probation officer, was a little over $11,000 and that was also the correct restitution amount. Now, Mr. Boateng objected to that number. Uh, he did not agree to any loss amount for restitution or guidelines purposes of more than the $5,200 in the sole count that he pleaded guilty to. There's a lengthy discussion of this at sentencing and the reason it was such a bone of contention is that Mr. Boateng is not a U.S. citizen. He's a citizen of Ghana. Uh, he's here on a visa and has applied for U.S. citizenship and if he is convicted of a fraud offense involving a loss amount of greater than $10,000, then that can have serious adverse consequences, uh, on the immigration side. And so at sentencing, defense counsel said that the loss amount should be limited to just the $5,200 involved in the offense conduct for the one count of conviction, but also agreed to pay more than that and asked the court to impose $10,000 because that would be just under the threshold that would make the offense an aggravated felony. Now, on the facts of the case, I acknowledge that there's really no way to get to $10,000. Really, the two competing amounts here are either $5,200 for the sole count of conviction or the $11,000 for, uh, the other credit card that was relevant conduct for sentencing purposes. I thought there was a question about a change to $9,000 and something. The district court, uh, ultimately awarded $9,950 at sentencing. And the reason for that was the court was sympathetic to the immigration concerns, uh, that Mr. Boateng had and felt that it would be unfair for him to suffer those consequences based on what the court at that time felt were maybe not concrete, uh, loss amounts. The numbers had been provided by Capital One and appeared in the pre-sentence report. I thought it had to do with the district judge's, uh, understanding that it would be difficult for him to pay more than that. Was that part of the rationale or did it all have to do with the immigration consequences? Uh, I don't remember if the district court was concerned about his ability to pay. Other than that, uh, the court made a comment to the effect of, in a lot of cases, restitution awards can be academic because they're so high and the defendant just doesn't have the ability to actually satisfy that award during the term of supervised release. And after supervised release expires, or as in this case, probation, there's effectively no way to collect, uh, that excess restitution award. But the, the main motivation behind the district court's award of the $9,950 was the concern about immigration consequences. And so then... So you say, I want to make sure I understood you to say there is, there isn't a way to explain or justify a $10,000 amount. Is that what you said? That's correct. But I still think that, uh, uh, Mr. Bulletin should get relief under at least one of the two issues in the case. The reason being that any amount over $5,200, which was what was involved in the count of conviction, exceeds the statutory maximum under the mandatory victim restitution. And I don't, I'm not sure I'm getting this in the right order, but the Victims and Witness Protection Act or the Witness and Victims Protection Act, one of them, can't you agree to an amount? Uh, under at least the, uh, 3663, which is the, the Victims and Witness, uh, uh, one, um, the parties can agree to pay some other amount of restitution other than what's required or at least recommended by that statute. Then there's 63, 60, excuse me, 3663 large A, which is the mandatory restitution statute. And under that provision, uh, the parties can agree to pay restitution to people other than the victims of the offense. Uh, the statute otherwise limits restitution just to victims. So, at least implicitly, the court does authorize, uh, uh, restitution amounts, uh, does allow the parties to agree to pay a restitution amount that includes relevant conduct, conduct that's not limited to the offense of conviction. But even under that, there wouldn't be a way to just to agree to an amount that would equal $10,000? Uh, there could be. The parties didn't. Because the government wouldn't agree to $10,000. The government, uh, insisted that the amount had to be the higher $11,000 amount. So, that was something that was effectively left open by the plea agreement. All right. So, so it was possible, it just didn't happen in this case? Well, under the terms of the plea agreement, uh, Boaten agreed to pay the amount determined by the court, which is what the statute, the mandatory statute requires. Requires the court to determine that restitution amount and make an award. There's also some language in the plea agreement right after that that refers to amounts determined by the government and the probation officer. And I think that's what the government here is hanging its hat on, which is that, well, that means that, uh, Mr. Boaten agreed to pay, you know, some amount other than what the mandatory statute might have required, coupled with a citation in that portion of the plea agreement to 3663, the non-mandatory restitution statute. But again, that language about, as determined by the probation officer and the government, that really is best read as relating back to the requirement in 3664, which is the mandatory restitution act, which requires, as part of the restitution procedures, that the probation officer collect this information from victims, requires the government to submit some of this information to the probation officer for that purpose. So I don't think this language is agreeing to pay something more than the minimum or really the maximum the law acquires. It's really just plea agreement language that's acknowledging the procedures that already exist in 3664, which is also cited in the agreement. So, no, I don't think on this record the court can say that there was any agreement to pay more than $5,200 as part of the agreement. But, as I said, at sentencing, nevertheless, counsel said that Boateng was willing to pay more than that but asked that it be $10,000 because of the potential immigration consequences. So when I say there's no way to get to $10,000, there's no agreement to that amount, but because, and this goes to the first issue, the Mandatory Restitution Act limits restitution to the amount involved in the conduct underlying the offense of conviction. You can't get to $10,000 under that because the offense conduct only involved $5,200. And the only way to get more than that, to the $11,000 amount that the court changed it to in the Rule 35 hearing, is to include what was relevant conduct at sentencing from the dismissed count. So, to get back to the question of the court's authority under Rule 35 to make that change, the government could have filed a notice of appeal if it disagreed with the restitution amount. The issue was fully aired at sentencing. There were numbers in the PSR that the parties argued about. And that's generally what happens when a party loses a contested issue at sentencing, is they take a direct appeal and bring it to this court. Instead, the government chose to file a motion under Rule 35, which gives district courts authority to correct sentences in very limited circumstances. And that's in the situation of arithmetical, technical, or other clear error. Well, there's no arithmetic error here. As I said, there are two competing numbers, either the $5,200 or the $11,000. There's no technical error here either, I don't think. And as far as clear error, the advisory committee notes to Rule 35 indicate that back in 1991, the rule was amended to give district courts some limited flexibility to correct really blindingly obvious guidelines, errors, because this was just a few years after the Sentencing Reform Act had passed and the guidelines era was ushered in, but also not to create such a wide opening that matters that should be litigated on appeal would be brought by way of a Rule 35 motion. So I'm not sure if the courts have exactly defined what the contours of a clear error would be for Rule 35, but it would have to be something more than an issue where all the evidence was before the court, the parties vigorously contested it at sentencing. Rule 35 seems to contemplate something more like something that everybody missed at sentencing and now recognizes was just completely wrong. Perhaps the wrong statute of conviction was listed on the judgment. Perhaps the defendant's name was wrong. Well, a district court, as a reason, said that I thought I could apply the 3553 factors and I was wrong about that. I discovered that I was wrong about that. Yes, that's correct. Why wouldn't 35A cover that? He's correcting the wrong. Well, because it's really, it's one, it was, ultimately the question was the dollar amount, and the reason the court said that is that at sentencing defense counsel phrased the $10,000 request in 3553 terms as a departure or a variance, which isn't really accurate because restitution is, at least under the mandatory statute, is something separate from whether the court's going to vary or depart from the sentencing guidelines. But in terms of whether that's a clear error, there's plenty of clear and obvious errors that this court resolves and that other appeals courts resolve all the time. So for something like this that's contested based on even a judge's acknowledged mistake about his authority to do something at the original sentencing, that's more properly brought in a direct appeal. Otherwise, it's potentially going to open the floodgates to parties filing a lot more Rule 35 motions before moving on to a direct appeal, just putting more work in the laps of the district courts to resolve things that really require the consideration. But less work in the lap of the appellate court. Well, that's something that's in the appellate court's wheelhouse, more so than the district court because it implicates standards of review, state of the record, and things like that. So why doesn't the appeal waiver apply? The appeal waiver says that he, quote, waives the right to appeal the sentence on any ground including any challenges to the determination of any monetary obligation. I've left out some words there, but that's the essential statement. Right. Well, I don't think that can be read as an agreement to pay whatever dollar amount the court happens to impose, especially if that amount is not authorized by law or if it exceeds the statutory maximum. I mean, if the district court had ordered a million dollars in restitution in this case, I don't think the appeal waiver would bar a challenge to that because it so plainly exceeds the statutory maximum. So in terms of the appeal waiver . . . You didn't really specifically make a statutory maximum claim here. Not in the district court, and I think the reason for that is the defense counsel just didn't know the law on this. Well, but that means you're under plain air review, which is pretty tough. It is tough, but I think the important thing is that in no circumstances could the statutory maximum be the $11,000 here, and that is because under the MVRA, this statute only authorizes restitution for the losses caused by this statute. It would only authorize relevant conduct if a fraudulent scheme was an element of the offense, and that's not an element of this offense. So under the MVRA, restitution was capped at the $5,200 involved in the offense conduct. Thank you. If there's time for rebuttal, thank you. Mr. Tindall. May it please the Court. Mark Tindall for the United States. I'd like to jump in on the Rule 35 issue about whether there was a clear error. It does appear from record that it was not, that it was a clear error to order the $9,950. There really are only two options. Either it was the $5,200 for the one credit card, or the second card should have been considered for relevant conduct where we get to our $11,000 figure. In the Rule 35 hearing, the district court admitted that he'd made a clear error. It does seem that the defendant also agrees there was a clear error. They just find fault with how it was rectified. They cited a case in their reply brief, United States v. Brown, out of the Northern District of Texas, where they used Rule 35 to depart downwards. There was a restitution order that incorrectly added in cost for investigation and types of fees that are not allowed under the statute. They're not statutorily authorized. And Rule 35 was used to lower the restitution amount. In this case, we have an error where factors that were not allowed to be considered under the statute were considered, and that's what the judge reconsidered. This wasn't him reconsidering his discretion or weighing the evidence or the validity of testimony. It was the judge looked at the amount caused by the credit card that was the offensive conviction, the second credit card, but then reduced it clearly to avoid the possible immigration consequences. And that's not authorized by the statute. The statute either has it be mandatory for just the count of conviction, which it would be if there wasn't an agreement, or the court shall order according to the plea agreement. That's 3663 Big A, subsection A3. And that's what happened here. The defendant agreed to pay for relevant conduct. The plea agreement language is clear. This court has upheld much, what I would call, squishier plea agreement language for a defendant agreeing for relevant conduct. For example, in the United States v. Miller, in the part of the plea agreement not specific to restitution, but just in the max penalties that might be imposed, it said the court may include restitution for relevant conduct, and the court found that that was sufficient to allow relevant conduct to be included in a Title 26 offense. The only way to read that statute, the plea agreement, is that we have the charged crime and relevant conduct. The defendant agreed to pay restitution for the relevant conduct, and the amount of relevant conduct is not in dispute. It wasn't what we thought, maybe it was $5,800, or maybe it was $4,750, which got us to that amount just under $10,000. We have the plea agreement saying the defendant agreed to pay for relevant conduct. It should have been the full $11,000. That's the amount the court found when he adopted the PSR by doing the sentencing guidelines. We have our loss for guideline purposes where the PSR had the range between $6,500 and $15,000. Clearly, that's including relevant conduct. Clearly, that's including the second credit card, and that's what the judge used when he calculated the sentencing guidelines and for calculating the sentence. In this case, I would really stress that this is really an improper calculation based on an incorrect formula. The judge took into consideration factors that were not allowed. On some level, this may be a pragmatic solution where the judge knew that if the government would appeal and come back down, we would have to redo this hearing, we'd have to correct the sentence on remand. In this case, the judge realized the clear error, took the opportunity to give the parties the opportunity to brief, to be present, to make arguments. Did the government object to that amount at sentencing? The government argued for the $11,000 but did not object to the $9,950. Didn't say, Judge, you don't have authority to do anything less than that. Did not say, Judge, you don't have authority. What improper factors did the district court consider in the $9,950? The immigration consequences for the defendant. Is that what the judge said? That was the main argument the defendant raised during the sentencing hearing. The judge said he had grave concerns about the amount being over $10,000. It's more clear in the Rule 35 hearing itself where the judge says, I made a clear error. What I was trying to do was mitigate the effect of this sentence and I considered the immigration consequences. So the transcript from the Rule 35 hearing makes it clear that's what the judge considered when that was not authorized. Well, I thought that the record reflected that at least in part the defendant at some point argued that the $11,000 was unfair because of his financial and family situation and also because of his substantial cooperation with the government. Was that argument not made? Yes, the defendant did make an argument that while he was cooperative and did not receive a 5K, the judge should consider that in addition as a reason to go below the $10,000. That would also be an improper factor to consider. And ability to pay would be an improper factor also. Is that right? Correct.  is not a factor to be considered. Under the old Victim Witness Protection Act, under just 3663, that is something that the court can consider. But it's clear from the record that the judge was using the Mandatory Restitution Act and the agreement under the Mandatory Restitution Act, which doesn't allow that type of discretion. Again, I'm confused by your recitation of the record and opposing counsel's because are you saying that at no point did Judge Ezra indicate that the sentence was in any way based on ability to pay or on cooperation with the government? He did not go down to the $9,950 amount based on either of those two factors. It does not appear. If there's nothing else, I'll move on. I guess I'm interested to know at the sentencing hearing what was the government's argument in favor of... The government argued for the $11,000 at the sentencing hearing. Right. And what was the argument? That it was mandatory, that both cards should be considered. The government did not get into whether... The actual loss and then the relevant conduct equal $11,000. And that was the government's argument. Correct. That was the number that was in the PSR, and that was the argument for the government, was that the defendant caused Capital One to lose $11,000 and therefore that was the appropriate amount for restitution. You are invoking the appeal waiver here, is that right? Yes. I think it's a little more complicated with the Rule 35 issue. But I do believe that the appellate waiver does cover any challenges to restitution because the only escape valve from that would be an illegal sentence. Here we have a statute that authorizes, as the defendant will admit under 3663A3, restitution up to $11,000. I agree that if the judge had come down and said that if there was a million dollar restitution for this, that the appellate waiver would not block that appeal because at that point that would be exceeding the scope of statutory authorization for the judge. But in this case we don't have that issue. We have the statutory authorization so it can't be an illegal sentence. Because the defendant agreed to pay for relevant conduct, this amount, whether it's the $9,950 or the $11,000, it doesn't exceed the maximum. The maximum in this case was $11,032.03. We see a lot of appeal waivers, and you do too, that specifically reserve the right to appeal using the words if it exceeds the statutory maximum. Nothing like that was ever suggested here. Is that fair to say? Correct. Mr. Smith, to come back to your question about what the basis for the district court's decision of sentencing was. Again, there was this extensive discussion about why we were asking for $10,000, and then the court said I looked at this carefully, and this is at page 316 of the record, which is the sentencing transcript. The court said I've looked at this carefully. I'm not as convinced. My comfort level with a number isn't as solid as yours. He was addressing the prosecutor. I would not normally reduce a number just because there's some third consequence to it because that's just the way it is. I mean we just can't feel sorry for somebody and therefore change the facts of the case. So the court was not willing to, I mean the court was sympathetic to the defendant but not willing to just ignore the law in terms of coming up with a restitution amount. But had concerns about the precise dollar amount that the government was advocating for. And the court also pointed out that the government had been willing to accept the plea to just the one count rather than both counts, which I suppose suggested to the judge that the government had some idea about what an appropriate loss amount or restitution amount would be in this case. And to turn back to the appeal waiver, as the government acknowledged, there would be some award that would be above the statutory maximum which would not be covered by the appeal waiver by definition because it doesn't extend to a sentence in excess of the statutory maximum. And on the Rule 35 question as to whether the appeal waiver bars the appeal of that order, plea agreements are construed against the drafter, which in this case is the government. They're construed narrowly against the drafter, which in this case is the government. And it does not list a Rule 35 modification as something that a defendant could not appeal from. And this court has recognized that similar language does not bar a defendant's appeal of, say, a 3582 motion years down the road. As the court's aware, in recent years, the Sentencing Commission has retroactively reduced the guidelines, recommendations, and drug sentences, and under 3582C2, a defendant could go back into court and ask for a reduced sentence in light of that reduction. A lot of those cases had appeal waivers. And this court has said that language similar to this case does not bar a defendant from appealing a denial of a 3582 reduction. So I think the court has to look at the exact terms of the plea agreement. It does not reach Rule 35, and so therefore the waiver does not bar this appeal. There are no further questions. Thank you. Thank you.